Good morning. I would like to reserve a couple of minutes for rebuttal time. This appeal of the District Court's granting of defendant's motion for summary judgment turns entirely on one issue. Did the District Court apply the correct standard in ruling on the motion? Specifically, was the Court correct when it asserted that plaintiff had to prove in his prima facie case that he was qualified for the position? Well, regardless of who had to prove it, it is a correct proposition that he is not in fact qualified and that he does not meet the minimum qualifications that were set forth for the position. So why does it matter where the burden of proof falls? Well, it matters because he actually, whether he's qualified or not, is irrelevant under the FEHA. It's relevant under the ADA. It's an element of a claim for discrimination under the ADA. It is not under the FEHA, and that's particularly clear. The appellant feels it was clear under the Bugatti case previously. It's particularly clear after August 24th. So if I walked in and said, not only do I play a doctor on TV, but I actually am a doctor, and I completely fabricated that, and I got a position requiring a medical degree, then I couldn't be fired when they found out I wasn't a doctor because it didn't matter that I had no qualification for the job? Oh, absolutely. You could be fired for not being a doctor. Why? Well, no, no, what they can't do is they cannot discriminate against you or harass you because you're mentally disabled once you're hired into the position. If they learn that you weren't qualified in the first instance, they can certainly terminate you for the lack of qualifications. Isn't that what happened here? Absolutely not. Absolutely not. What happened here is he went to work. He was hired for the position. Even though he didn't actually have the qualifications and fabricated things on his resume. He fabricated things on his resume, certainly, and we admit that. The issue that they – there's two issues here that they brought up. Actually, there's only one. It's that they required five years of clinical experience. He put on his resume that he had seven years. And he didn't have even five. He had three. Well, he had three post-medical school. Right. And that – Let's assume that had been clearly stated in the job requirements. We demand five years of experience post-medical degree. Right. But you haven't challenged the propriety of the standards for the job. In other words, that it's okay that they've required somebody to have experience. So there's nothing wrong with the criteria themselves. Correct. Oh, absolutely. The employer is entitled to set the criteria to obtain the job. And they said five years of clinical experience. Dr. Klein understood that to mean all clinical experience because he had three and a half. It's undisputed if you count his clinical experience during medical school, he has over seven. That's a nonsensical way to read the qualification requirement set for the job. They did not care about what he did in medical school. Those five years – anybody or his dog reading those qualifications would understand that those are five years post-medical school. Well, yeah, all I can say is he did misunderstand that. Well, let's go on the assumption for the remainder of the questions that he didn't have five years, that he had three. Okay. Or less than five, anyway. So that he didn't meet the minimum qualifications, which were legitimate qualifications. Where does that leave you? It's totally irrelevant to the FEHA claim. And the reason it's irrelevant is under the Green case that came down two weeks ago that was cited by appellee sent to this court by letter last week. Copies, if you need copies of that case. No, we've all read it, I think. Okay. And I was glad to hear it was referenced in the first argument today. Under FEHA, and this is not an ADA case, this is under the FEHA, the prima facie elements to prove discrimination under Green, there's three elements. The first is the plaintiff is a person with a disability or medical condition. Dr. Kwan clearly qualifies under that element. He's bipolar, clearly qualifies under the FEHA. The second element is the defendant made an adverse employment decision, thirdly, because of plaintiff's disability or medical condition. He was terminated, so they clearly made an adverse employment decision. And he was terminated because they put him on disability and then he refused to go on long-term disability. They terminated him because of his disability. At the time they terminated him, they didn't know about his qualifications, that there were inaccuracies in his resume or in his work history. So the reason for the termination in December of 2001 was because he was disabled. He was bipolar. I want to stop here about trying to unsort Ms. Gu's case out of the California Supreme Court, Bugatti, Green, and Jensen. It seems to me that in reading these cases carefully that Green is an accommodation case. Is that correct? That's incorrect. Bugatti was an accommodation case. And Green is not, doesn't say accommodation? Green specifically states at page 6 of the Green decision that it recognizes Bugatti was dealing with accommodation. But it specifically states and embraces the reasoning of Bugatti for a discrimination as well as an accommodation claim. And confirms at page 7, the top of page 7, that the FEHA affords plaintiffs greater protection than the ADA, quote, by removing the burden of proving capacity to perform as an element of a prima facie case. Well, even assuming that's right and you get past the prima facie case, that's why I started by saying it doesn't matter who has the burden of proof. In fact, he wasn't qualified for the job. So even if it's up to the employer after you've made out the prima facie case, let's assume that for the sake of this question. They've now demonstrated that he is not minimally qualified to hold the job. So why does he get to win? Well, first of all, we're not saying he gets to win. We're saying they're not entitled to summary judgment, that that's an issue that has to go to the jury. But the answer. But there's no question that he is not minimally qualified. There's no triable issue of fact. But the problem is whether he's minimally qualified or not is irrelevant under FEHA. The burden shifts. So you're saying it's not even a burden shifting. It's just once you've made the prima facie case, you go to the jury? No, no, no. I'm saying once you've made your prima facie case under Greene, and this is all laid out on page seven of the Greene opinion very clearly, once you've established those prima facie elements, the burden then shifts to the employer. And what the employer has to show is that the employee is unable to perform the essential functions of the position, even with a reasonable accommodation. It doesn't have anything to do with. Let me just go back, though. I don't want to ‑‑ I want to understand the case. It says right at the beginning, plaintiff Greene is there because of a reasonable accommodation challenge. Isn't that how that case got to the California Court of Appeals? That is originally ‑‑ I believe that's correct, Your Honor. That's how it originally ‑‑ did it change? Did it turn into something that it wasn't? I mean, I don't think you can play fast and loose with these cases, because you're trying to slice and dice various California cases. I think we have to be quite clear as to whether they're accommodation cases or disability cases. Was Greene an accommodation case? Greene, yes, I believe the court is correct. And at page six, the court discusses Bogatti and acknowledges it's only an accommodation case. Actually, I'm sorry. Let me ‑‑ actually, I'm sorry. That's not correct. Greene is a disability discrimination case at page ‑‑ end of page three is the section about disability discrimination, which includes Greene's addressing the Bogatti as well as the Brundage line of cases that Apelli relies on in this case. So people file for disability discrimination under accommodation. I mean, that's the question. Is it appropriate under that statute? But is this an accommodation case? That's the question. Right. And I don't ‑‑ Was he fired? Was it an accommodation case? No. He was put on disability. And so he sued for disability discrimination as well as a failure to accommodate. As counsel of the first argument pointed out, he was getting Hep C shots as well as had a back problem. Let me ask you this, if I may. Assume for the purpose of the question that I go along with you so far as there has been a showing of a prima facie case. The employer is now required to show that he cannot perform essential functions of the job. Correct. I think the employer then has two arguments as to why he can't perform essential functions of the job. The first one is directly related to the initial qualifications. It may be argued that you can't perform the essential functions of the job without a fair amount of experience. Okay. He doesn't have it. Second, if you're bipolar and you refuse treatment and you say you don't need accommodations, you're unable to perform the essential functions of the job. Either one of those two strikes me as at least plausible. Tell me what's wrong with both of them. Okay. I will address both of those. And Green is instructive on the first question, which is the qualifications versus essential functions. At page 12 of the Green decision, Green addresses what is essential functions. How do we define those? They summarize them as the job description for the plaintiff or the job position, the requirements of the job position that the plaintiff holds or desires to hold. And, in fact, Green goes on and summarizes the job description of the plaintiff in Green. And they focus entirely on the requirements of the position, not the qualifications to get the position, but the requirements. What do you have to do in the position? And remind me, what was the job in Green? He was a stationary engineer in a prison. That's right. Right. And that's why the back injury in particular was an issue. Yeah. Now, here's what bothers me about applying a sort of a physical function job, which stationary engineer is in at least part, that analysis to a case like this one, because, for example, the FedEx case we had earlier today, which involved really the physical capacity to lift and pull and so on, and the stationary engineer job, which involves a fair amount of physical work, some mental work, but a fair amount of physical work. Here, he's being employed as a doctor in a technical capacity. One of the things you rely on for a professional employee who's a doctor, who's a lawyer and so on, is you need to rely on their mental capacity and judgment. And the five-year experience minimum is a surrogate for, does this person have enough judgment that I can rely on him or her? It's not a question of can he lift 40 pounds. That's easy. He either can or he can't. Can I rely on his judgment? Well, until somebody's had a lot of experience, I'm not going to rely on their judgment. What do you do with that? Well, I think that, again, goes to whether he's qualified to enter the position. He's clearly not. Well, the question now, for the purpose of my question, is he able to perform the essential functions? And why is the employee and company not allowed to say, well, one of the essential functions is that you be someone that I can trust? But that's, and that may be accurate. That's not what they've said. They have never addressed what the essential functions of the job are. All they've ever addressed and what the district court relied on was the qualification issue. So, in other words, they didn't really point to a BFOQ, bona fide occupational qualification aspect of the case is what you're saying? Correct. They never said in order to do this job, Dr. Kwan has to read the literature, has to understand the literature, has to interact with doctors, has to sell our product. None of that. All they said is he was never originally qualified to take the position, which, by the way, is the same issue that was in Murillo v. Right Stuff Foods. The sexual harassment case under FEHA, illegal alien who was unqualified for the position, you cannot harass, you cannot discriminate against people once you hire them. He wasn't harassed. He was let go. That's different. He was terminated because of his disability. That's discrimination. That's what the FEHA protects. Well, he was terminated when his disability resulted in a lot of sort of bad behavior, behavior that was not tolerable for someone in that position. And then they were willing to put him on long-term disability, I think, in order to help him get his medication, do whatever it is. And he says, no, I won't do it. Right. And the problem is their doctors say, one, he hasn't taken his medication and he's behaving erratically. His doctor, who's been treating him for a number of years, who's a professor at UC San Diego, says he has been taking his medication. He's fine to work. The only accommodation he needs is not to fly at night because of sleep deprivation for his bipolar disorder. And they never engage in the interactive process. They never offer to do that. There's never any discussion. And I see I'm running out of time. Yes, you have about a minute for rebuttal if you want to save it. Okay. I'll address the issue of the accommodation at that point. Thank you. Good morning, Your Honors. Claudette Wilson of Wilson, Petty, Cosmo & Turner here on behalf of SmithKline Beecham, doing business as GlaxoSmithKline, and I'll refer to them as GSK to speed up the discussion. This is a fairly straightforward case as far as I'm concerned, which is that the district court made a very considered and wise decision, and we fully support her analysis. This is a case where you have an employee who came in under false pretenses, took a job with enormous responsibility, very high pay, and then was unable to even complete the training program because of his inability to do the job, was put on leave, was paid for ten months of paid leave, and when he refused to take any action to address his condition was finally terminated. And under those circumstances, I think the court clearly correctly decided that he is unable to state a claim. I want to address the burden shifting issue. I agree with the comments of the court that I don't think it's necessary to decide that for this case, but because it's such a big issue in the brief, I wanted to address it. The California Supreme Court in the Guz decision did address the burden shifting issue. It was an age discrimination case, but age discrimination falls under the same statute as disability discrimination, so it's the same analysis. And the Supreme Court said that in order to state a prima facie case for age discrimination, that the employee has the burden, well, let me read the language from the case, and citing McDonnell Douglas, quote, At trial, the McDonnell Douglas test places on the plaintiff the initial burden to establish a prima facie case of discrimination. This step is designed to eliminate at the outset the most patently meritless claims, as where the plaintiff is clearly unqualified. That is the Supreme Court analysis of where the burden lies. There's a lot of … Well, it's interesting. I mean, once you get down to the appellate courts, it's a morass. I mean, there's no question about that. We've got cases all over the place, and I brought two big binders mostly of those cases, because they're all over the place. And Green, you know, we obviously gave that to the court based on our feeling that we had an ethical obligation to make the court aware of that. That decision is not final. It is, you know, the time to appeal has not yet run on that decision, and obviously we think that's wrongly decided. But the way I analyze those cases is the way they've been analyzed by so many other court decisions, which is that the Bugatti case was really an accommodation case, and that it was limited to that context. Now, I actually think Bugatti is wrongly decided, because all of the provisions of Government Code 12940 are limited by the introductory sentence, which says that all these various activities, including failure to accommodate, are illegal unless they're because of a bona fide occupational qualification. So in the statute itself that governs all of these disability issues, the California legislature has said somewhere in that process you must show you're qualified. The California Supreme Court said we put that on the plaintiff. Our position is we don't care who has the burden. He is not qualified. And the district court agreed with us, which is she thought it was a prima facie case, that it was obligated that the plaintiff show it, but if not, she had an alternative finding, which was it was an affirmative defense, and we had met our affirmative defense of showing he was not qualified. Now, the plaintiff seems to be trying to say that they don't need to show that he is qualified ever in the process, which brings us, I think, to the key case in that area, which is the Quinn case, which is cited in our papers. And the reason I draw the court's attention to that case, well, let me step back for a moment. There is not a very clear distinction between qualifications within California statutes in terms of your sort of prerequisite qualifications of you've got the skills, you've got the education, and you've got the experience. And that second element of qualification, which is you can do this job on a much sort of broader, more general basis. Now, this is where I do think the California courts correctly look to the Federal provisions that are very similar, and we cite California Federal Regulations 1630.2, which very nicely lays out those two types of qualifications. All the sort of mess and morass is on that second issue of who has to show they can't do the job. It's not as messy if you look at the first issue, which was really our focus, which is does this person have, have they met the requirements of this job? Should they even be in the job? And if they don't meet that, then you don't go on to discuss whether or not they need to be accommodated. And that's the point of Quinn. That's the point of Quinn, exactly. If you're not qualified from the get-go, then there's no, you can't complain of an adverse decision. Exactly. And Quinn is essentially unchallenged. Bogatti doesn't even mention Quinn. The Green case mentions it, but just in a citation to say there's a lot of courts that have looked to Federal law. So it's, it's. Green's a different situation, though, anyway, because there's no similar. Well, Quinn, I think, is, is almost identical to our circumstances, except that instead of fraud. Green is not the same as Quinn, is all I was saying. Green is not the same as Quinn. Oh, exactly. Yes. Quinn and Quan are the same. I've been struggling with that. The, the Quinn case is really the analogous case in the, in the state court side. In Quinn, you have an applicant, and, you know, in better facts than our case, the applicant, you know, honestly goes in, does his testing. Because of the employer's error, he doesn't, he is told he's passed the hearing test, even though he doesn't have the hearing. He gets the job, or he gets, you know, he's in that training process like Dr. Quinn was, and they discover that he can't hear, and so he can't do the job, and he gets terminated. And the court says, we don't need to look at accommodation or anything else. We realize it was the employer's error, but you never qualified for this job. You should never have been in this job. You can't state a claim. That's it. It's over. And those are our facts. This was an individual who didn't qualify for the job and basically can't state the claim. How did those kind of cases, though, transect with the cases on essentially resume fraud and after acquired evidence, where you learn these facts and you say, well, now that I know this, I never would have been in this situation in the first place. And the Supreme Court said one of the reasons that you can't use the after acquired evidence, of course, is you'd never get to the discrimination. You'd always be bootstrapping, in effect. Right. Well, there's sort of, there's two types of after acquired evidence cases. And one, the sort of key cases, that McKinnon case, the U.S. Supreme Court decision, where you had a circumstance where the employee did an act while employed that was a basis for termination. And the question was, does that defeat her claim? And the court said, no, that doesn't defeat her claim. But it was, it didn't go to one of the elements of her claim. And let me just try to explain that in a better way. It's those facts where she claimed age discrimination. In her deposition, it came out that she had taken confidential documents in preparation for her lawsuit. And the employer said, we would have fired her for that. So case over. It didn't go to qualifications or any kind of analysis of whether or not she could state a claim. It was sort of an intervening event that stopped damages. That, I agree with that analysis, that that's an appropriate analysis there. Our case is different because the after acquired evidence goes to show that he can't meet his claim, that it eliminates one of the elements that he has to show. And that's the way the after acquired evidence was used in two of the other cases used by the district court, the Finnegan and the Mantelet decisions. And those were cases, and I'll just give you an example of the Mantelet case, where it was a person who had applied for a postal position. They learned she was let go, and they learned through the course of litigation that she was not qualified to do that job. And the court said, does it matter when you found out that she wasn't qualified? If she's not qualified, she can't state a claim. End of discussion. Case dismissed. Summary judgment affirmed. Now, I did want to, the court had indicated in earlier arguments that there are lots of ways to decide a case, and sometimes it's best to go with the easiest one. I'm going to give you a couple of other options. One is the court found, as we discussed already, the court found that whoever's burden it was, we met our burden. Whether it's an affirmative defense, we met the burden. He's not qualified. Story over. So unless you come to the conclusion that you do not have to show that you actually were qualified for the job in order to state a claim, then that's the end of the story. The court went on further to find that Quan was terminated for legitimate business reasons, for nondiscriminatory reasons, and that there was no evidence of pretext. And that is Exhibit 20, page 19, which is the district court's decision. Now, that, as I understand it, has not been challenged. That is not part of the appeal. That was one of the court's bases for her decision that we had properly terminated him. And so I think, you know, in terms of sort of the simplest issue, that's the simplest issue. And I ---- That would assume a prima facie case. Exactly. And that's what the court said in the decision was, even assuming that somehow he meets the qualification, he comes up with something, which, of course, they've tried to do, and I can address that if you'd like. But if he comes up with something, even if he was qualified, we've shown that we had a legitimate business reason for terminating him, which was he couldn't do the essential functions of the job. And so given that, given they didn't make a showing of pretext, that's the end of the story on that level. Now, I do want to address just briefly that issue of this sort of after acquired evidence of his qualifications. The application is actually quite straightforward. The application asks for your experience as a doctor or as a pharmacist. Dr. Quinn completed that application and never included the information that he has brought forward in opposition to our motion for summary judgment, that he had this other experience that should have been counted. So even Dr. Quinn didn't interpret the requirements to be pre-medical school because he would have included, or during medical school because he would have included those in his dissertation of what his experience was. And in any case, the company obviously has the right to determine what the qualifications for the job are, and it's clear on the record that they felt those were qualifications. Okay. So I'll go ahead and wrap up unless you guys have specific questions. I don't believe that any of us has any additional questions. Then basically, the cases that address the issue that I think is before the court, which is whether or not an employee can state a discrimination claim if they never met the original qualifications for the job, the only line of cases that are out there that address that sort of more narrow issue are the Quinn cases and the progeny of Quinn. And those cases make it very clear that you do have to meet that element of being qualified for the job in order to state a discrimination claim. And there's been really no argument about that in the California courts. That proposition seems to be established and has not been challenged.  But setting that aside, even if that were not the case, the court alternatively found that we had met our obligations in terms of establishing the burden-shifting test of showing that we had a good business reason for termination and that there was no evidence of pretext. Thank you, counsel. Thank you. We have a very short but I hope useful amount of time left for rebuttal, about a minute. Thank you. I will try to be succinct here. I wanted to quickly address the second point that Judge Fletcher had asked about that I didn't get to, regarding the fact that plaintiffs said he didn't need an accommodation. That is a complete red herring. At the time they terminated him in December of 2001, the only information they had was from their doctors and from Dr. Hager, Dr. Kwan's doctor, saying he's capable of working, the only accommodation he needs is not to fly at night. Almost two years later, at his deposition in this case, he says he didn't need an accommodation. Their decision was not based on anything he had told them at that time about whether he needed an accommodation or not. Total red herring. Finally, or additionally, the court simply ignored the evidence. Appellee asserts that the court said they had a good business reason for firing Dr. Kwan. It's undisputed he was fired because he was disabled. The court ignores the fact on the pretext issue, ignores the fact that Dr. Hager says he's capable of going back to work with an accommodation. Doesn't mention that in her order at all. Simply says their doctors say he can't do it, therefore there can't be any pretext. It's an issue for the jury to decide. And in closing, I would just urge the court to read carefully the Green v. State of California case. It's very clear on the prima facie elements, on the burden shifting, and that a qualified individual standard is not part of FEHA. And this is a FEHA case, not an ADA case. Thank you. Thank you, counsel. The case just argued is submitted.
judges: Graber, McKeown, W. Fletcher